SHAW, Banking Com'r, v. LAMAR COUNTY.*
(No. 3607.)

Court of Civil Appeals of Texas. Texarkana.
Dec. 18, 1928.

Rehearing Denied Jan. 3, 1929.

John W. Goodwin, of Austin, Joe T. Goodwin, of Jacksonville, and L. C. Sutton, of Austin, for appellant.

Beauchamp & Lawrence, Long & Wortham, Park & Dohoney, and W. F. Moore, all of Paris, for appellee.

WILLSON, C. J. (after stating the facts as above). In James Shaw, Banking Commissioner, v. Lamar County, 4 S.W.(2d) 608, this court held that the deposits in the |Dallas bank to the credit of "Lamar County School Fund, G. R. Coleman, Co. Treasurer," referred to in the statement above, constituted a·trust fund in Coleman's hands for the benefit of Lamar county. The main controversy in the court below, in this case, was, it seems, as to whether the $28,000 of that fund passed to the credit of the Paris bank on its account with the Dallas bank in conformity to the order of Coleman, trustee of the fund, as shown in the statement above, continued to be such a trust fund in the hands of the Paris bank. Appellee's contention that it did, sustained by the court below, was based on testimony of Coleman that he had the Dallas bank to make the transfer of the $28,-000 to provide means for use by the Paris bank in paying claims it was bound as depository of said school fund to pay, including the one for $19,948, for which it drew the draft on the Dallas bank in Hatcher's favor. Appellee insisted that the $28,000 was a "special deposit" of funds Coleman held as trustee, and that ·same could be lawfully used only to pay claims against the school fund. Appellee insisted, further, that it appeared $19,948 thereof, being the amount of the unpaid draft in Hatcher's favor, was not used to pay such claims, and was a part of $26,-291.48 in the Dallas bank to the credit of the Paris bank at the time it (the Paris bank) ceased to do· business; and appeared, fur-

*Writ of error refused.

ther, that the $26,291.48 passed into the hands of the banking commissioner at the time he took charge of the Paris bank's affairs.

In the view we take of the record, the judgment in appellee's favor was unwarranted without respect to whether it appeared that the $28,000 was a trust fund in the hands of the Paris bank or not, and, if it was such a fund, without respect to whether it appeared the $19,948 appellee sued for was a part thereof or not; for, if the $28,000 was a trust fund, and the $19,948 was a part thereof remaining in the hands of the Paris bank at the time it ceased to do business, the banking commissioner nevertheless was not liable to appellee as claimed by it, unless the the fund reached his hands as a part of the assets of said Paris bank. Empire State Surety Co. v. Carroll County (C. C. A.) 194 F. 593; Tyler County Bank v. Shivers (Tex. Com. App.) 6 S.W.(2d) 108; Bishop v. Mahoney, 70 Minn. 238, 73 N. W. 6. Not only was there no evidence that the fund, or any part of same, ever reached the hands of the banking commissioner, but it appeared from undisputed evidence heard at the trial that, at the time the Paris bank ceased to do business, it was indebted to the Dallas bank in the sum of $100,000, evidenced by a promissory note, and that the Dallas bank claimed a right, and exercised it, to apply as a payment on said note the $26,291.43 on its books to the credit of the Paris bank. Of course, appellee did not have a right to complain of the banking commissioner, as it did by this suit, if the Dallas bank had a right to so apply said $26,291.43. And also, of course, we think, if the Dallas bank did not have such a right, and yet exercised it, appellee's remedy, if any it had for the wrong, was not by a suit against the banking commissioner as the holder of trust funds it was entitled to.

The judgment will be reversed, and judgment will be here rendered that appellee take nothing by its suit.